Si-iauck, J.
 

 It is admitted that the alleged duty is charged upon the defendants by the terms of the act cited. Whether the act is constitutional is.the only question raised by the demurrer.
 

 A complete analysis of the one hundred and sixty-eight sections of the act would not be practicable. Present purposes will be best subserved by the briefest statement of its provisions, which will bring into view those whose validity is denied upon constitutional grounds. It provides for what is usually called the Torrens system of land titles, with some modification. It requires assignees and trustees for the benefit of creditors to take such steps as will bring the lands in their hands within its operation. It authorizes other trustees and executors and all other persons claiming to be the owners of land to take such steps. It provides that all lands once brought within its operation shall so remain. In its general scope it provides that as to all lands within its operation the registration of title shall be substituted for the system of registering deeds heretofore in operation in the state, and that every registered title shall at once become indefeasible in the hands of the purchaser for value from the registered owner. The proceedings by which such registration is to be accomplished, and all claims of interest in the lands adverse to the registered owner cut off, are the subject of the earlier sections of the aet„
 

 The application must be made in writing filed with the probate judge or the clerk of the court of
 
 *603
 
 common pleas in the county where the land is situated. The substance of the application is prescribed as follows:
 

 Section 7. Every application must contain an accurate description of the land, the amount, nature and kind of every incumbrance; the full name and post-office address of the persons owning the land adjoining the land sought to be registered; if occupied, the full name and post-office address of the occupant; the kind of estate he holds and when it will terminate, and all easements and inferior estates to the fee simple, either in law or equity, of every kind, must be clearly stated, with the full names and post-office addresses of the persons holding such estates. The application shall contain such further statements as is (are) required by this act, or may be required by the court in which the application is filed, for the purpose of carrying out the provisions of this act.
 

 Forms of application are prescribed by the act.
 

 The provisions as to notice are as follows:
 

 Section 12. Immediately on the filing of such application, the court shall cause the applicant to give notice by publication in some newspaper of general circulation in said county, for the period of four consecutive weeks, inserted once a week, to all whom it may concern.
 

 Section 13. The notice required by section 12, shall be in substantially the following form:
 

 Form 3.
 

 To whom it may concern: — You are hereby notified that..........of........., in the county of.........and state of Ohio, did, on the.....day of.........., A. D. 189.... file with the..........court of said county, his application to register his title in and to the following de
 
 *604
 
 scribed lands (here briefly describe the same, giving township, lot, etc., in substance as in application), and that.........be certified as the registered owner thereof. And that on the .....day of.........., A. D. 189....., at.....o’clock, .... m., at the said court, in the..........of .........., in said county, said application will be heard, and order taken in respect thereto, as asked in said application.
 

 You are hereby further notified that if you have or claim any estate or interest in, or any lien upon said lands, or know of any reasons why such lands should not be registered, or wish to file objections thereto, you are required to then and there appear and assert your claim, and file your objections to the registry of said land, or the said lands will be ordered' registered and brought under the provisions of the act of the general assembly of Ohio, passed the..... day of..........A. D. 189....., and thereafter dealt with under said act as registered land and you will thereafter forever be debarred and stopped from setting up any claim thereto, or therein except under the provisions of said act.
 

 Section 14. Immediately on the first publication of said notice, the publisher shall file with the court as many copies of the notice as the court may require for service, and said court shall cause the applicant, or some other competent person, to serve each person named in said application, resident of the county, with a copy of said notice. And persons named in said application, residents without the count3r, must be served b}T sending a copy of said notice to their address by mail. Proof of service shall be made by the sworn affidavit of the person making the same, and filed with the court; such proof must show that such service was made personally or by mail, at least twenty-one
 
 *605
 
 (21) days before the day so fixed for the hearing of the application.
 

 Referees may be appointed to determine questions arising on applications. Surveys and abstract may be required, and the “court may .establish rules for procuring correct abstracts from responsible parties.”
 

 The duties of the court and the requirements of persons notified are prescribed in sections 23 and 33, as follows:
 

 Section 23. Upon the hearing of an application to register land, the court or referee shall carefully examine the same, together with all records, papers and surveys pertaining to the title of said applicant, as required by this act, and if the statements therein are found by the court to be true, and that the applicant is the owner thereof, and has the fee simple title to the land therein described, and that all of the provisions of this act have been complied with and that the applicant is entitled under this act, to have the title of said land registered, the court shall order that said lands be registerd and brought under the provisions of this act, and thereafter dealt with as reg;istered land.
 

 Section 33. Every person notified, either personally, or by application of the notice required by section 12 of this act, of a filing of an application to register, lands, who has or claims to have any estate right, title or interest in, or lien upon the land in the application described, or any part thereof, adverse to the applicant, and that is not fully admitted in the application, shall on or before the day set for the hearing of the application, set forth in writing, their respective claims, giving the nature and particulars thereof. Such writ
 
 *606
 
 ten statement shall be signed, sworn to, and filed in the court, on or before the day last aforesaid.
 

 Sections 34 and 35 prescribe the procedure if an adverse claimant appears, and the right to take an appeal or prosecute error is prescribed as follows:
 

 Section 36. The party or parties aggrieved by the finding, judgment, order or decree of the court, provided in sections 34 and 35, and 68 and 69, may appeal, or prosecute error, direct either from the court of common pleas, or probate court, in such manner as is provided by law, to the circuit court, which court shall have final jurisdiction in such eases, and no petition in error therefrom shall be allowed to be filed or prosecuted.
 

 The orders of the court made upon the application are to be entered upon the land registration docket, and it “shall be conclusive evidence in all courts of the state, of the facts therein stated, except as otherwise provided in this act.” The order with all papers, etc., is then to be transmitted to the recorder by whom the land is registered upon “theregister of land titles.”
 

 The general results of registration are defined in the following sections:
 

 Section 72. The registered owner of any estate, or interest, in land brought under this act, shall, except in case of fraud to which he is a party, or of the person through whom he claims, without valuable consideration paid in good faith, hold the same subject only to such estate, mortgages, liens, charges and interests, as may be noted on the last register ..of title in the recorder’s office, and free from all' others, except:
 

 First
 
 — Any subsisting lease, or agreement for a lease, for ■ a period not exceeding three years,
 
 *607
 
 where. there is an actual occupation of the land under the lease. The term lease shall include a verbal letting.
 

 Second
 
 — All public highways shall be deemed to be excluded from the certificate.
 

 Third
 
 — Any tax or special assessments for which the sale of the land has not been had at the date of the certificate of title.
 

 Fourth
 
 — Such rights of action as are followed by this act.
 

 Fifth
 
 — Liens, claims or rights arising or existing under the laws of the United States, which the statutes of Ohio cannot require to appear of record upon the register.
 

 Section 73. Except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or of any charge upon the same, from the registered owner, shall be htld to inquire into the circumstances under which, or the consideration for which such owner, or any previous registered owner, was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest in the land.
 

 Section 74. In the case of fraud, any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act provided that nothing contained in this section shall affect the title of a registered owner who has taken bona fide for valuable consideration, or of any person bona fide claiming through or under him.
 

 Section 75. If a deed or instrument is registered which is forged, or executed by a person under legal disability, such registration shall be void, provided that the title of a registered owner
 
 *608
 
 who has taken bona fide for a valuable consideration, shall not be affected by reason that he claims title through some one, the registration of whose right or interest was void, as provided in this section.
 

 Section 76. No unregistered estate, interest, power, right, claim, contract, or trust, shall prevail against the title of a registered owner taking bona fide for valuable consideration, or of any person bona fide claiming through or under him.
 

 Section 77. Knowledge of the existence of any unregistered estate, interest, power, right, claim, contract, or trust, shall not be evidence of want of bona fides so as to affect the title of any registered owner.
 

 Section 78. After the land has been registered, no title thereto adverse, or in derogation of the title of the registered owner, shall be acquired by ■ any iength of possession. Nor shall any interest in registered land be acquired except in accordance with the provisions of this act. No land once brought under and made subject to the provisions of this act, shall ever be withdrawn therefrom.
 

 Section 79. The register of title of any land, and the certificate of title, and duly certified copies thereof, shall, except as herein otherwise provided, be received in all courts as evidence of the facts, therein stated, and, except where attacked for fraud, as in this act provided, as conclusive evidence that the person named therein as owner, is entitled to the land for the estate or interest therein specified.
 

 Section 80. All dealings with land or any estate or interest therein, after the same has been
 
 *609
 
 brought under this act, and all liens, encumbrances and charges upon the same, subsequent to the first registration thereof, shall be deemed to be subject to the terms of this act, and to such amendments and alterations as may hereafter be made; and whenever a memorial has been entered as permitted by this act, the recorder shall carry the same forward upon the register, and all certificates of title, until the same is cancelled upon the register, as authorized by this act. . The bringing of land under this act shall imply an agreement, which shall run with the land, that the same shall be subject to the terms of that act, and all amendments and alterations thereof.
 

 Section 81. The decree of the court ordering registration, shall be in the nature of a decree in rem and shall be final and conclusive as against the right of every and all persons, known and unknown, i o assert any estate, interest, claim, lien, or demand, of any nature or kind whatever, against the land so ordered registered, except as provided in this act.
 

 Section 82. Any person not having actual notice of the proceedings to register land as provided in this act, may at any time within five years from the date of the entering of the decree of registration, but not thereafter, bring an action in the court where such decree was entered, to establish his right, claim or demand against such land. Provided, however, before such action shall proceed, it must be made to appear to the court that the person bringing such action, or those under whom, he claims, had no actual notice thereof in time to appear and file his objections, or assert his claim.
 

 
 *610
 
 Section 83. The action provided for in the last preceding section, shall in no way affect or disturb the rights of any person in said land, acquired subsequent to the registration thereof, bona fide and without knowledge, and for a valuable consideration.
 

 The lands of a deceased owner, whether testate or intestate, shall pass to his personal representatives, “and the same shall be administered in like manner as personal property.” Sections 91 and 104, inclusive, contain other provisions with reference to transmission and administration. Sections 105 and 111, inclusive, provide for mortgages, leases and incumbrances on registered lands, and sections 112 to 123 inclusive, regulate judgment and other statutory liens, partition and judicial sales and prescribe the duties of receivers and master commissioners.
 

 Section 124 is as follows: “Assignees, or trustees for the benefit of creditors, and commissioners of insolvent debtors, holding title to unregistered land from the assignor, shall make application as provided under this act to bring such land upon the register of title.”
 

 The act in terms confers upon the recorder, authority with respect to the discharge of mortgage and other liens and the correction of errors, .and pi’ovides for appeals from his decision regarding such errors as follows:
 

 Section 125. When any registered mortgage, encumbrance, or charge is satisfied in whole or in part, it. shall be the duty of the mortgagee, encumbrancee, assignee, or other person authorized by law to discharge the same, to forthwith file with the recorder a certificate of satisfaction, in whole or in part, as the case may be, executed
 
 *611
 
 according to law, and the recorder shall enter such satisfaction upon the register. In the case of failure of the mortgagee, or other person, to certify such satisfaction, then the mortgagor, or other person entitled to such discharge, may ask proof of the same before the recorder; notice thereof, either actual or constructive having been given to the person holding the security, and upon the recorder being satisfied that such mortgage or other charge has been satisfied, as claimed, he shall enter such satisfaction on the register, and endorse the same upon the certificate of title.
 

 Section 128. When any lien shall cease to be operative in law, by reason of limitation of time, proof of the same may be made, on proper application being filed with the recorder, and the persons shown to be interested notified of such application in the manner provided by this act. If the recorder shall be satisfied that the lien is without force in law, by reason of lapse of time, he shall enter such discharge upon the register, and the same shall be
 
 prima facie
 
 evidence thereof.
 

 Section 131. Whenever it appears that there is an error or omission in any certificate or memorandum or memorial, or that • any memorandum or memorial has been made, entered and endorsed, or certificate entered or issued by mistake, the recorder .may, on his own motion, or upon the application of any person interested, summon all persons registered as interested in the lands to which such certificate, memorandum or memorial has been made relates, to appear at an appointed time, and produce their certificates of (or) registered instruments, and if at the appointed time the recorder shall find such error or omission or mistake to exist and that no rights of
 
 tona fide
 
 pur
 
 *612
 
 chasers or lien holders for value, have intervened whereby his or their estate or interest shall be impaired by the correction of such error, omission or mistake, he shall, if no appeal is ta ren as provided in the next section, correct such error or mistake, or supply the omission, and may direct the cancellation of any certificate or registered instrument or anv memorandum or memorial entered upon the registration book, or endorsed upon the registered instrument or certificate, by mistake.
 

 Section 132. Any person aggrieved by the finding of the recorder for or ag’ainst the existence of such error, omission or mistake, may appeal from the decision of the recorder to the court of common pleas or probate court, on giving bond to the acceptance of the recorder as provided by law in other cases for appeal, within ten days of the date of such finding, and the recorder shall make out and deliver to the clerk of the court of common pleas or probate court, immediately a transcript of his proceedings in such matter, and shall make a notation of such appeal upon the register of title. When such appeal is determined, the court shall forthwith cause a certified copy of such judgment or decree to be filed with the recorder, and the judgment of the court shall be final and conclusive.
 

 The material provisions of the act concerning the Assurance Fund are:
 

 Section 144. Upon the first bringing of land under the operation of this act as hereinbefore provided, and upon the issuance of a certificate of title pursuant to section (142) one hundred and forty-two, shall be paid to the recorder one-tenth of one per cent, of the value of such land as appraised for taxation, for the purpose of an assur
 
 *613
 
 anee fund under this act. All sums of money so received as provided in this section, shall be paid on the first Monday of each and every month to the county treasurer of his county.
 

 Section 145 prescribes how the fund shall be invested.
 

 Section 146. Any person deprived of land or of any estates or interest therein in consequence of fraud, or misrepresentation in bringing such land under the operation of this act, having had no notice of the proceedings, or by the registration of any other person as owner of such lands, estate or interest, or in consequence of any error, omission, mistake or misdescription in any certificate of title, or in any entry or memorandum in the register of titles, or by being omitted in proof of heirship or certificate thereof as*provided in section (98) ninety-eight of this act may, at any time within four years from the date of the discovery of such fraud, error, omission, mistake or misdescription, bring an action in any court of competent jurisdiction for the recovery of the damages so by him sustained, against the person or persons committing such fraud, or responsible for such error, omission, mistake, or misdescription in any certificate of title, or in any entry or memorandum on the register of title. In any such action the county treasurer must be made a defendant, and all persons against whom the plaintiff claims the right to pursue for damages must be made defendant to the action. And if this be not done, such persons shall thereby be discharged from liability for damages in the premises.
 

 Section 147. If such action be for the recovery of loss or damage only through an omission, mistake, or misfeasance of the recorder or any
 
 *614
 
 deputy or clerk of the recorder in the performance of their respective duties under the provisions of this act, the recorder alone need be made defendant with the county treasurer; but if such action be brought for loss or damage arising from the fraud or wrongful act of some person or persons other than the recorder, his deputies or clerks, then such action shall be 'brought against only the county treasurer, and such person or persons aforesaid. In any such action the defendant or defendants, other than the county treasurer, shall be primarily liable when recovery is had, and final judgment shall not be entered against the county treasurer, until execution against the other defendants shall be returned unsatisfied in whole or in part, and the officer returning the execution shall certify that the amount still due on the execution cannot be collected except by a resort to the assurance fund. Th court being satisfied of the truth of such return, made upon proper showing, shall order the amount oí. the execution and costs, or such part as shall remain unpaid, to be paid bvthe county treasurer out of the assurance fund. It shall be the duty of the prosecuting attorney of the county, or the county solicitor if there be one, to appear and defend all suits that may affect such assurance fund.
 

 Section 148. Nothing in this act contained shall be so construed as to leave subject to action for recovery of damages, as aforesaid, any
 
 bona fide
 
 purhaser, mortgagee, or other holder of a lien, charge or interest, for a valuable consideration, on land brought under this act, on the plea that his vendor, mortgagor, or person creating such lien, charge or interest, may have been registered as proprietor through, fraud, error or omission; or
 
 *615
 
 may have derived from or through a person registered as owner through fraud, error or omission.
 

 Section 149. In case the person primarily liable as provided in section 150, and against Whom such action of damages is directed to be brought, as aforesaid, shall be dead or cannot be found in this state, then, in such case, it shall be lawful to bring such action for damages against the county treasurer of the county in which the land may be situated, as defendant, for the purpose of recovering the amount of said damages and costs against the assurance fund. In such ease, if final judgment be recovered, the county treasurer, upon .the receipt of a certificate of the court, before which said action was tried, shall pay the amount of such damages and costs as may be awarded, and charge the same to the account of the assurance fund. All actions involving the assurance fund, shall be brought in the county where the land is situated.
 

 Section 150. Whenever any money has been paid by any county treasurer out of the county assurance fund, as in this act provided, the county treasurer of such county may bring an action and institute proceedings in any court of competent jurisdiction against the person or persons primarily liable for such damages and costs, to reimburse such assurance fund; or should such person or persons be dead, such treasurer may proceed against his or their estates. It shall be his duty to bring such action or institute proceedings in every case where there may be a reasonable probability of reimbursing such assurance fund in whole or in part.
 

 Section 151 limits the action authorized by sections 146 and 147 to ten years.
 

 
 *616
 
 Whatever may be thought of the burdens of fees and costs which the act lays upon the estates of deceased persons and insolvents, or of its probable effect to disturb titles that are now well settled, it must be deemed a valid enactment unless, in some of its substantial provisions, it transcends the limitations which the constitution has placed upon the exercise of legislative power, or invades some guaranty which it has erected to the ownership and enjoyment of property.
 

 Counsel for the defendants deny the validity of the act upon the following grounds: Because it provides for cutting off vested interests in property without due course of law in violation of section sixteen of the Bill of Rights; because it provides for the taking of private property for private purposes without the owner’s consent in violation of section nineteen of the Bill of Rights; because it provides for the exercise of judicial power by the recorder in violation of section one of article IV of the constitution which vests all such power in the courts of the state; because, being a law of a general nature and not having a uniform operation throughout the state, it violates section twenty-six of article II of the constitution; and because it impairs the obligation of contracts in violation of section twentyTjeight of article II of the constitution of the state and section ten of article I of the constitution of the United States.
 

 The constitutional guaranty invoked 'by the first objection is of a remedy
 
 per legem terrcie
 
 as it was expressed in Magna Charta, or according to the law of the land, or by due process of law, or by due course of law as it is expressed in equivalent phrases in the several constitutions of the American States. It is no longer questioned that the
 
 *617
 
 guaranty operates as a limitation upon both judicial and legislative authority. In
 
 Norman
 
 v. Heist, 5 W. & S., 171 Chief Justice Gibson concisely declared its purpose to be “to exclude arbitrary power from every branch of the government.” Cooley’s Const. Lim. 432. The precise objection urged against the act in this regard is that it provides for the divesting of rights in property by the proceeding to register without.the issuance and service of summons according to the law of the land. The act does not require a petition- or bill such as is appropriate in suits between adversary parties, nor does it require or contemplate that a summons or equivalent preliminary process shall issue from the court advising those who claim interest in the land to be registered that their alleged interests are to be the subject of adjudication in the proceeding. Both by the terms of the act and by the form which it prescribes, the only notice required is to be given by the applicant. In the uotice so required to be given no one claiming an interest adverse to that of the applicant is to be named, although the names, places of residence and alleged interests of all who may claim adversely, are known. The terms of the act require that the court shall cause the applicant, or some other competent person, to serve each person named in the application, resident of the-county, with a copy of the printed notice. All persons named in the application, resident without the county though within the state, shall be served be sending copies of such notice to their addresses by mail. Only those who are named in the application are required to be served even in this manner. Reference to section seven, providing what the application shall con
 
 *618
 
 tain, and to its form as prescribed in section eight, shows that the persons to be thus named and served are the owners of the land adjoining that sought to be registered, the occupant of the land to be registered, if it is occupied, and the holders of easements and estates inferior to the fee simple. One known to claim the title in fee simple adversely to the applicant need not be named in the application, nor receive a copy of the notice, though his place of residence may be within the county and known. As to him the only' requirement is that he may have a chance to see a notice signed by the applicant, addressed “To whom it may concern,” containing a brief description of the land to be registered, and published in any newspaper of general circulation within the county. That this is sufficient notice to those who are interested in the adjoining property is not denied.
 

 Is it such notice as the law of the land requires to be given to persons claiming interests in property of the pendency of a judicial proceeding, in which such interests are to be the subject of adjudication and in which, unless they appear, a decree will be entered precluding their further assertion? It is said that it is, because the proceeding to register land under the act is
 
 in rem.
 
 Whether it is
 
 in rem
 
 or
 
 in personam
 
 is determined by its nature and purpose. To say that the legislature may prescribe such notice as is appropriate to proceedings
 
 in,
 
 rem, and thus invest the proceeding with that character, is to affirm its power to annul the constitutional requirement. In this aspect of the case, and considering the effect of registration upon interests adverse to those of the applicant, the proceeding to register does not, in any substantial respect, differ from a suit
 
 quia
 
 
 *619
 

 timet
 
 to settle title. It bears the least possible analogy to a proceeding
 
 in rem.
 
 The
 
 res
 
 is not taken into the possession of an officer of the court. No charge or lien is asserted against it.
 

 It is not to be sold with a view to the distribution of its proceeds, and it partakes, therefore, less of. the nature of - a proceeding
 
 in rem
 
 than does the foreclosure of a mortgage. The land is not a thing of shifting
 
 situs
 
 like a ship, against which obligations may accrue today in one jurisdiction and tomorrow in another. The status of the land is not changed by registration. The substantial thing determined by registration is that the person who makes the application has a right of property in the land to the exclusion of all other persons. The judicial force of the proceeding is wholly expended in a conclusive determination of the rights of persons in the land. Except when the land is occupied by one who claims adversely to the application, the questions determined in registration are such as both before and since the adoption of the constitution have been determined by courts of equity; and their .decrees much more distinctly than the judgments of courts of law operate upon persons.
 

 To authorize a court to determine the adverse claims of parties touching their right in things, judicial process is indispensable. Judicial process in its largest sense, comprehends all the acts of the court from the begining of the proceeding to its end. In a narrower sense it is ‘the means of compelling a defendant to appear in court, after suing out the original writ, in civil and after indictment, in criminal cases. ’ ’ (Bouvier). In every sense it is the act of the court. This act does not corn-template process. The notice which it prescribes
 
 *620
 
 is the notice of the law of admiralty. The process required by law of the land is the process of the common law.
 

 In
 
 Webster
 
 v.
 
 Reid,
 
 11 How., 437, the court considered the validity of a judgment rendered in proceedings under an act which attempted to authorize the quieting of titles in suits against defendants to be designated as “Owners of the half breed lands lying in Lee county,” and notice to be given by publication. Justice Me Lean, in the opinion said “These suits were not proceedings
 
 in rem
 
 against the land, but
 
 in personam
 
 against the owners of it. Whether they all resided within the territory or not does not appear, nor is it a matter of any importance. No person is required to answer in a suit on whom process has not been served, or whose property has not been attached. In this case there was no personal notice, nor attachment or other proceeding against the land, until after the judgments. The judgments are therefore nullities. ”
 
 Brown et al.
 
 v.
 
 The Board of Lease Commissioners,
 
 50 Miss., 471.
 

 That the legislature may provide for a substituted service of judicial process, when it is required by necessity, is not doubted. If, in a suit to adjudicate the rights of persons in property within the state, a defendant resides without the state, such necessity is apparent, for the process of the state has no efficacy beyond its borders. Other cases of necessity are recognized.
 

 The principle is that the state may provide for the adjudication of all adversary rights of persons in property within its borders, and to the end that such jurisdiction may be complete the legislature may provide a substituted service of process for cases in which actual service cannot be made.
 

 
 *621
 
 In such case nothing more is required by the law of the land than that the substituted' service shall be such as, in the exercise of legislative discretion, shall be found most apt to accomplish the purposes of actual service.
 
 Shepherd
 
 v.
 
 Ware et
 
 al., 46 Minn., 174. Surely, these views will surprise no one who is familiar with the legislative history of the state.
 

 Section fifty-five of the civil code enacted in 1853 is now in force as section 5035 of the Revised Statutes. It provides “A civil action must be commenced bv filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon.” The subsequent sections of the chapter relate to the service of the summons so required to be issued. Their provisions for a substituted or constructive service relate wholly to cases in which actual service is impracticable. In these respects the provisions of the code continue the former practice pursued since the organization of the state. We know of no instance prior to the passage of this act in which there was a departure from the views clearly stated by Judge Cooley (Const. Lim., 6th Ed. 452): “In judicial investigations the law of the land requires an opportunity for a trial; and there can be no trial if only one party is suffered to produce his proofs. The most formal conveyance may be a fraud or a forgery, public officers may connive with rogues to rob the citizen of his property; witnesses may testify or officers certify falsely, and records may be eollusively manufactured for dishonest purposes; and that legislation which would preclude the fraud or wrong being shown, and deprive the party wronged of all remedy, has no
 
 *622
 
 justification in the principles of natural justice or of constitutional law. ”
 

 If it is borne in mind that the questions here considered concern the adversary rights of persons in property, it will sufficiently distinguish the eases which involve the police power, or the right of eminent domain or the right of taxation.
 

 Perhaps a more extended consideration than was necessary has been given to this particular question, since the provisions of the act and the briefs suggest the consciousness of those who framed it and those who defend it, that it does not meet the constitutional requirement as to due process of law. In one of the briefs submitted for the plaintiff it is said: “The act contemplates no adjudication as to the title. The applicant cannot be adjudged to have a good title as against B or C, or unknown parties in which a right of ownership appears. If there is any adverse interests, or the possibility of conflicting rights, he is relegated to other courts and other proceedings to try such issues. The court considers only the
 
 status
 
 of the
 
 res.
 
 If the applicant is not found to be the undisputed owner of the property in fee simple, his title is not registered.”
 

 This view of the act is opposed to its provisions and obvious import. In the prescribed notice “to whom it may concern” is the authorized declaration that those thus notified “will be thereafter forever debarred from setting up any claim etc.” Not recurring to other provisions of the act which provide for the indefensibility of the registered title, section seventy-four makes it indefeasible in one who has purchased for a valuable consideration from one who has procured registration by fraud. Section seventy-five imparts the
 
 *623
 
 same character to the title of such a purchaser from one who has secured registration by forgery of a deed of the real owner; and section seventy-six provides that “no unregistered estate shall avail against the title of a registered owner taking
 
 bona fide,
 
 etc.” How is it to be known that the applicant is the “undisputed ownei” until adversary parties are served with process and afforded an opportunity to say for themselves whether they dispute the claim of the plaintiff or applicant? However effective the separation of disputants may be in the prevention of street broils, in the judicial determination of their disputes, the law of the land requires that they be' brought together.
 

 The provisions of the act with respect to an “Assurance Fund” attract attention in this connection. Those for whose indemnity this fund is raised are described in section 146: “Any person deprived of land or of any estates or interest therein in consequence of fraud, or misrepresentation in bringing such land under the operation of this act, having had no notice of the proceedings, or by the registration of any other person as owner of such lands, estate or interest, or in consequence of any error, omission, mistake or misdescription in any certificate of title, or in any entry or memorandum in the register of titles, or by being omitted in proof of heirship or certificate thereof as provided in section (98) ninety-eight of this act may,” resort to the fund within the time and in the manner specified. It is not likely that the legislature has thought itself authorized to provide for making whole those who have been defeated in judicial proceedings of an adversary character, involving only private rights, and conducted according to the law of the land. The terms
 
 *624
 
 of these sections of the act show that the fund is to be raised to indemnify those whose lands have been wrongfully wrested from them under the earlier provisions of the act, and without due process of law. When the provisions of the constitution are applied to this penitential scheme it at once becomes apparent that it is both inadequate and forbidden. Section nineteen of the Bill of Rights ordains: “Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads which shall be open to the public without charge, a compensation shall be made to the owner in money, and in all other cases, where private property shall be taken for a public use, a compensation therefor shall first be made in money or first secured by a deposit of money. ”
 

 This act is said to be a rebuke to those who have inherited from feudal times the conceit that property in lands is especially sacred. That property in lands hhs been more secure than property in chattels has resulted necessarily from the fact that they are not the subject of conflagrations or larceny. Some icontribution to the equality of insecurity of property of the two classes may be found in those provisions of the act which look to the administration and distribution of the lands of deceased persons as though they were chattels. But property in all of its subjects is equally sacred under the protection of this section of the Bill of Rights. To permit its abrogation would equally expose all descriptions of property to spoliation. The section is an inviolable assurance to all owners
 
 *625
 
 of lands and chattels that unless they are required for a public use, they may retain them in specie, placing upon them any estimate that may be suggested by judgment, sentiment or caprice; and it is' not within the combined authority of the departments of the government of the state to say that the estimate is too high. This section of the Bill of Rights was so construed by this court in
 
 McCoy v.
 
 Grandy, 3 Ohio St., 463, upon reasoning that has ever since been deemed entirely satisfactory.
 

 In another aspect this scheme is violative of the same section of the Bill of Rights. If the use were public the section would require an assured compensation to the owner of the property taken in every event, and, unless in a public exigency or for the construction or repair of free roads, it would require such compensation to be first made. In this act there is no provision for compensation to be first made. The owner’s recourse is to a subsequent action to be instituted by himself and subject to a limitation. Nor is there any provision for an assured compensation at any time. The owners resort is to an assurance fund which we are told, has been estimated to be sufficient to indemnify those who would be wrongfully deprived of their lands under the provisions of the act. It can scarcely need comment to show that this is not a compliance with the constitutional requirement.
 

 In yet another aspect the scheme is violative of the same section of the bill of rights.
 

 . Whether the.assurance fund would be adequate or inadequate, it is, in part at least, to be derived, from forbidden forces. The real estate in the hands of an assignee for the benefit of creditors
 
 *626
 
 belongs to the assignor and his creditors. These lands, by the terms of the act, are subjected to a charge or contribution payable through the recorder to the treasurer of the county. That is, to the extent of such assessments, this property is to be taken by public authority and without the consent of the owners. For what public purpose? Primarily the purpose is to indemnify private persons whose lands have been wrongfully taken from them under the provisions of the act. If the act were otherwise constitutional, the ultimate benefit would accrue to those who, as the result of registration which gives conclusive effect to mistake, fraud or forgery, have acquired lands which belong to others.
 

 That this is in no sense a public purpose seems clear. Considering the purposes for which government is instituted and the high conception of individual right which prevailed at the time of the adoption of the constitution, it would be strange if authority had been conferred upon the state to carry on the business of an insurer of private titles. No such authority is implied in any of the terms of the constitution. It is not implied in any of the enumerated purposes for which government is formed. It is entirely foreign to those purposes. The legislature may, by law authorize the organization of corporations for the purpose of carrying on the business of insurance, but this grant of power is rather an implied negation of its authority to conduct such business itself.
 

 The functions of the state are governmental only. Its powers are embraced within the three familiar divisions of legislative, judicial and executive. He who affirms the existence of the power in question must be able to find it embraced in one
 
 *627
 
 of these divisions. And since the insuring of titles does not essentially differ from any other insurance, nor indeed from any other business or occupation, he must find authority in whose exercise the state may become the competitor of the citizen in every vocation.
 

 It is further urged that the act is void because it attempts to confer judicial power on the recorder. Counsel agree that power of that character cannot be conferred upon a ministerial officer, but in support of the act it is urged that the powers indicated are ministerial and not judicial.
 

 The principal powers conferred are to take proof after notice to the holder that a mortgage has been discharged and after a hearing to enter a discharge upon the register; to make an entry that a lien has become inoperative in law by reason of limitation of time when application has been made therefor, the person interested notified and he is satisfied that such is the fact, to correct memorials made or issued by mistake, if the rights of a
 
 bona fide
 
 purchaser or lien holder for value have not intervened.
 

 It is true that the power to ascertain and decide is not necessarily a judicial power, and it is frequently exercised by ministerial officers and legislative bodies. Whether the power to hear and determine is judicial depends upon the nature of the subject of the inquiry, the parties to be affected and the effect of the determination. While it is not' supposed that any definition of judicial power, sufficient for all conceivable cases, has ever been attempted, it is clear that “to adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial de
 
 *628
 
 partment.” Cooley Con,-at. Lim., 109. Recurring to the duties of the recorder under the act, he is not merely to enter the evidence furnished by the agreement of the parties that a lien has been discharged, or that it has become void by the lapse of time, or that a mistake has intervened touching their rights; but he is to apply the rules of evidence to the ascertainment of -disputed facts, to apply the rules of law concerning payment, to interpret and apply the statute of limitations as it may affect the enforcement of liens including such questions of disability as may arise, to decide the questions of fact and law that may arise in determining whether mistakes have intervened and who are
 
 bona,ficle
 
 purchasers;-and then to malm an entry which is to have the same effect in con • eluding the rights of the adversary parties as would a decree in equity. That these are judicial powers is entirely clear. They seem to have been so regarded by the general assembly, for there is a provision for appeal from the decisions of the recorder. This is not supposed to include all the judicial powers which the act assumes to confer on the recorder, but it is sufficient for present purposes.
 

 Nor is this objection to the act avoided by the provisions which contemplate a review of or appeal from the action of the recorder. It would, perhaps, be found upon a careful consideration of his powers, that they are not all embraced within the provisions for review or appeal. But the assumption that they are so embraced would not validate the act in this respect. The recorder as a ministerial officer is incompetent to receive a grant of judicial power from the legislature. His acts in the attempted exercise of such powers are neces
 
 *629
 
 sarily nullities. They cannot be effective to impose any obligation or burden upon a citizen, or to deprive'him of any right. The act plainly contemplates that the person against whom the recorder decides in the exercise of any of the powers sought to be conferred must either submit to the adverse decision or take upon himself the burden of an appeal. In view of the constitutional provision on the subject, he cannot be forced to this alternative.
 

 If these are judicial powers, it is admitted that they cannot be vested in the recorder. If they are not judicial, the provisions for an appeal are void since, as was said by this court in Logan Branch Bank
 
 ex parte,
 
 1 Ohio St., 432, “we have no idea of an appeal, except from one court to another. ”
 

 An examination of
 
 People ex rel., Kern
 
 v.
 
 Chase,
 
 46 N. E. Reporter, 454, will show that in some of its aspects the act under consideration, though differing from the act passed by the legislature of Illinois to accomplish the same purpose, is within the principles upon which that act was held void.
 

 The views expressed touching the guaranties of the Bill of Rights are in accord with those of eminent lawyers who have considered methods for simplifying the records of titles and diminishing the labors of searching them. The general system in the contemplation of this act has been thought impracticable because questions of vested rights must remain open for want of due process. There have, accordingly, been recommended legislative enactments to shorten and simplify conveyances, to remove disabilities, to shorten the limitations of actions, to provide for general indexes for townships and wards or other small districts so
 
 *630
 
 as to restrict the area of search; and other like remedies operating prospectively, and having due regard to vested rights.
 

 However the general' system proposed by this act may have operated where no system of registration previously existed and the conserving influences of constitutions are not enjoyed, it seems, in its prominent features, to be inapplicable where consitutional provisions, paramount to legislative enactments, protect vested rights and restrict the state to the exercise of functions that are governmental in their nature.
 

 No discussion of the wisdom of the act would be appropriate here nor do we deem it necessary to consider other questions affecting its validity. Such questions are presented, but those decided seem sufficient to dispose of the subject.
 

 Demurrer sustained.