(Muskingum County Common Pleas.)
1900.

ZANESVILLE TELEPHONE AND TELEGRAPH CO. v. ZANESVILLE.

---

1. The distribution of the powers of government into three co ordinate branches, executive, legislative and judicial, is an essential feature of our system of constitutional government; and prohibits the confusion of these powers by conferring upon one branch powers that belong to another, unless necessarily incidental to the powers conferred by the constitution.

2. The probate courts of the several counties of the state belong to its judicial department, and can not be authorized to exercise powers that are legislative or administrative in character, except as the same may be incident to their judicial powers.

3. Section 3461, Revised Statutes, requiring probate courts to direct the mode in which a telegraph or telephone company may use the streets and alleys of a city or village, when the municipal authorities and the company are unable to agree, is legislative, and not judicial,

in character, and is therefore unconstitutional.

(Reversed by Circuit Court, see 20 C. C., 34, but affirmed by Supreme Court, October 16, 1900.)

MUNSON, J.

The record in this case discloses that, prior to August 9 1899, the Zanesville Telephone and Telegraph Company filed its petition, amendment to the petition, and supplemental petition in the probate court of this county, wherein it is alleged said company is a corporation duly organized under the laws of Ohio for the purpose of constructing, operating, and maintaining a line or lines of telephone or telegraph within the state of Ohio, by the use of the streets, alleys, public ways, and other public grounds of the villages, towns and cities of said state, and any of the public roads, highways and lanes within the state, by entering thereon and making the preliminary surveys and using and occupying said streets, alleys, and highways with poles and other appliances necessary in constructing, operating, and maintaining a line of telephone and telegraph; and the said company has the right to contract with any other person, individual, or company, for the purpose of transmitting messages over their telegraph or telephone lines, and with a right to purchase any lines of telephone or telegraph from other individuals or corporations.

The petition further represents that, on March 20, 1899, the said company presented to the city council of Zanesville, a certain ordinance and agreement, providing for the mode of use within the limits of said city over the streets, alleys, and public ways of the same, the agreement providing for the mode and manner in which said telephone and telegraph lines should be constructed along said streets, alleys, and public ways, so as not to incommode the public by the use of the same; that said ordinance and agreement was by said city council referred to the street and alley committee. Said plaintiff frequently requested said street and alley committee to act upon the same and make report to the city council, but it refused so to do. The petition further alleges that plaintiff was unable to agree with municipal authorities as to the mode of use of the streets and alleys, and that the municipal authorities unreasonably delayed to enter into any agreement with the petitioner.

In the supplemental petition it is also alleged, that the city had proposed an agreement to the plaintiff, but that the agreement was of such a character that the plaintiff could not accept the same, and did decline to accept the same, and that the plaintiff and said city were unable to come to terms as to the manner and mode in which plaintiff might use and occupy the streets of the city of Zanesville, so as not to incommode the public in the use of the same.

The prayer of the petition and the supplemental petition is that the probate court might determine and fix the mode of use of the alleys streets, and public ways of the said city for the said telephone and telegraph company.

Various motions were made by the defendant city to these pleadings of the plaintiff below, and a demurrer was interposed to the petition, amendment, and supplement thereto, which demurrer was overruled by the probate court: and thereupon, the defendant city filed its answer to the petition, amendment and supplement thereto, in which it is alleged that the city did not refuse or unreasonably delay entering into an agreement with the said company, and in which it denied that the mode of use proposed by the city council was unreasonable, and denied that the city and the company were unable to agree as to the mode of use of said streets and alleys, and said city council only took sufficient and reasonable time to duly consider and act upon the matter in the interest of the said city.

The record further discloses that, on August 9, 1899, the cause came on for hearing in the probate court, upon the pleadings and the evidence. Whereupon, the following judgment was rendered by the probate court:

"This day this cause came on for trial, and the court having heard the evidence and arguments of counsel, and being fully advised in the premises, finds that the law, to-wit:

Section 3461, Rev. Stat., of Ohio in so far as it authorizes this court to act, is unconstitutional, and that this court has no jurisdiction to hear and determine this cause, and for that reason, does not here consider the evidence introduced upon the trial of this cause, in any respect, and for the reason stated, it is ordered that the petition of Zanesville Telephone and Telegraph Company filed herein be and it is hereby dismissed, and said company shall pay all the costs of this proceeding, to all of which said company then and there excepted."

The record further shows that, a motion for a new trial was submitted, which was overruled by the probate court, and that the plaintiff duly excepted. A bill of exceptions was duly allowed.

The errors complained of in the petition in error are:

1. That the court erred in striking certain allegations out of the petition.

2. Said court erred in overruling the motion for a new trial.

3. Said court erred in dismissing the petition of the plaintiff in error below and in holding that it had no jurisdiction to hear and determine the cause of action set forth in plaintiff's petition and in holding sec. 3461, Rev. Stat., unconstitutional.

4.. That the court erred in the admission and rejection of certain testimony

5. That the court erred in giving judgmet for the city of Zanesville.

6. For other errors apparent upon the record.

The only matter urged upon the hearing of the petition in error was that, the court below erred in holding that it had no jurisdiction to hear and determine the cause, in dismissing the proceedings, and in holding sec. 3461, Rev. Stat., unconstitutional.

Section 3461, Rev. Stat., provides as follows:

"When any lands authorized to be appropriated to the use of a company. are subject to the easement of a street, alley, public way. or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; and if they cannot agree, or the municipal authorities unreasonably delay to enter into an agreement, the probate court of the county, in a proceeding instituted for that purpose, shall direct in what mode such telegraph line shall be constructed along such street, alley, or public way, so as not to incommode the public in the use of the same; but nothing in this section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley. or public way. beyond what may be necessary to restore the pavement to its former state of usefulness."

Section 3471, Rev. Stat., provides that the provisions of sec. 3461, Rev. Stat., shall be extended to any company organized to construct a line or lines of telephone.

Counsel for plaintiff in error contend that, inasmuch as the constitution does not expressly prohibit the general assembly from legislating upon the subject matter provided for in sec. 3461 and 3471, Rev. Stat., and inasmuch as sec. 8, art. 4 of the constitution provides that the probate court may have such jurisdiction as may be provided by law, therefore, sec. 3461, Rev. Stat., is not unconstitutional, and that the probate court is fully authorized and empowered, under said section, to determine and fix the mode of use in which the streets and alleys of the municipality may be occupied by a telephone company, so as not to incommode the public in the use of the same.

Counsel for defendant in error. on the other hand, claim that sec. 3461, Rev. Stat., is unconstitutional, because by it, the legislature has attempted to confer upon the probate court, a judicial tribunal, a power not judicial in its nature and that the determining and fixing of the mode of use of the streets and alleys of a municipality by a telephone company. so as not to incommode the public in the use of the same, is a legislative function or duty; that the probate court cannot be called on to exercise any legislative duty or function; that it is no part of the constitutional duties of the probate court to provide police regulations for the municipality; and that the probate court had a right to decline to assume the responsibility incident to the discharge of those duties.

Thrown into syllogistic form, the argument of counsel for defendant in error is, that the legislature cannot, under the constitution, impose upon the probate court the exercise of non-judicial functions; that the duty or function imposed on the probate court by sec. 3461, Rev. Stat., is non-judicial; therefore, sec. 3461, Rev. Stat., is unconstitutional, and that the court may refuse to exercise or perform the duty so enjoined by said section.

Whether or not the premises in the syllogism are true or false cannot be determined by any a priori reasoning. Their truth or falsity can be determined only by the inductive and critical process, and the interpretation of the constitution itself, and a determination of the exact nature of the power or duty enjoined upon the probate court by sec. 3461.

Section 2, art. 1, of the constitution provides that: "The legislative power of this state shall be vested in a general assembly, which shall consist of a senate and house of representatives."

Art. 3, section 1, of the constitution provides that: "The executive department shall consist of a governor, lieutenant governor, secretary of state, auditor of state, treasurer of state, and an attorney general."

Section 1, art. 4, of the constitution provides that: "The judicial power of the state is vested in a supreme court, circuit courts, courts of common pleas, courts of probate, justices of the peace, and such other courts inferior to the supreme court as the general assembly may from time to time establish."

That, in a broad sense, the powers of

one of these departments shall not be conferred upon either of the others is not only within the spirit, but substantially within the letter of the constitution. The universal doctrine of American liberty, under written constitutions, requires the distribution of the powers of government into three departments, legislative, judicial and executive, and that each of these departments, within its own proper sphere, shall be supreme, co-ordinate with, and at the same time independent of the others.

"Constitutional government in the United States is distinguished by the care that has been exercised in committing the legislative, executive, and judicial functions to separate departments, and in forbidding any encroachment by one department upon another in the exercise of the authority so delegated."

"The underlying theory upon which this tripartite division rests is very ancient; but it was in the original constitution of the new American States that it was first practically applied."

"In Virginia, where, under the colonial system, judges sat in the legislature, the bill of rights, adopted in 1776, which marked the transition from province to commonwealth, provided that the legislative and executive powers of the state should be separate from the judiciary."

"The distributive clause thus originated was inserted in the other constitution, from time to time adopted by the new states. So that, except in a few instances all the American state constitutions contain a provision for the separation of governmental powers into legislative, executive and judicial."

See Vol. 6, Am. & Eng. Ency, (2d Ed.) 1006.

This doctrine, however, is not without criticism, and the theory is never entirely true in practice.

Goodnow, in his Comparative Administrative Law, p. 20, says: "Modern political science has, however, generally discarded this theory: both because it is incapable of accurate statement, and because it seems to be impossible to apply it with beneficial results to the formation of any concrete political organization."

Goldwin Smith, in The Bystander, Toronto, May, 1880, says:

"The separation of executive power from the legislative is a dream, though Montesquieu has established the belief that it is one of the great securities of liberty."

See also Wilson's Congressional Government. pp. 285, 306; Steven's Sources of the Constitution of the United States,

p. 47; Von Holst, Constitutional Law of the United States, pp. 67, 68.

But the courts and law book writers have not seen fit to follow the vagaries of modern political publicists. From Western Union Telegraph Co. v. Myatt, 98 Fed. Rep., recently decided, (in the circuit court of the United States for Kansas) I quote the following:

"There is full accord among elementary writers and publicists, who treat of the growth and development of the principles of an enlightened government and the relations between the state and the individual. Dr. Paley says, 'The first maxim of a free state is that the laws be made by one set of men and administered by another; in other words, that the legislative and judicial characters be kept separate.' Blackstone says, 'In this distinct and separate existence of the judicial power in a peculiar body of men, nominated indeed, but not removable at pleasure by the crown, consists one main preservative of the public liberty, which cannot subsist long in any state, unless the administration of common justice be in some degree separated, both from the legislative and also from the executive power."

Then in the same case, there are long quotations from Baron Montesquieu, and also from Kilbourne v. Thompson, cited in 103 U. S., 191. The courts have recognized that the separation of the powers is far from complete, and that the line of demarkation between them is often indefinite.

"Each of three departments normally exercises powers which are not within its own province.

' Thus the executive, by means of the veto, shares the legislative power. and, in passing on claims, the judicial power.

"The legislature may be authorized to exercise the appointing power and in adjudicating claims, and as in some states, in granting divorces, it acts judicially.

"The courts, too, legislate not alone by decisions, but also by making rules very often of the force and effect of statutes, and they are not infrequently clothed with the power of appointment.

"Since, however, all the departments of government derive their authority from the same source, they in equal degree, represent the sovereignty, and each within its own sphere is supreme and independent, though in practice they often conflict with each other."

See 6 Am & Eng. Ency., p. 1009, where the following doctrine is laid down:

"A grant of general powers to one department constitutes of itself an implied exclusion of all other departments from the exercise of such powers, unless the power be conferred on such other departments in express terms."

It is true that there is no positive and specific prohibition in the constitution of Ohio against conferring on any one branch of the government the duties of another co-ordinate branch. The distribution of the powers of government between three departments in the federal constitution is as general in its provisions as the constitution of Ohio.

See Justice Miller's opinion in Kilbourne v. Thompson, 130 U. S., 191; Fed. Rep., vol 98, p. 349; Amer. & Eng. Ency., vol. 6, p. 1009, note 2 and authorities there cited; Cooley on Constitutional Limitations, 250; 98 Fed. Rep., p. 336, par. 5, and syl; Appeal of Norfolk St. Ry. Co., 37 Atl. Rep., 1085.

This doctrine is also well established in Ohio in State v. Baughman, 38 Ohio St., 459: "The division of the powers of the state into legislative, executive, and judicial, and the confiding of these powers to distinct departments is fundamental. It is essential to the harmonious working of this system that neither of these departments should encroach on the powers of the other."

In State ex rel. v. Peters, 43 Ohio St., 647: "The sovereign powers of the state is vested in three departments, legislative, executive, and judicial. Whatever power is vested in either the executive or judicial departments cannot be exercised by the legislative. What are legislative powers, or what executive or judicial powers, is not defined or expressed in the constitution except in general terms. The boundary line between them is undefined and often difficult to determine. Many decisions are reported growing out of this general division of powers, and eminent writers upon constitutional law have endeavored to mark the line. To these sources we must refer without quoting."

The right of the governor to remove members of the board of police commissoners was sustained on the grounds that in removing them, he was exercising an administrative power, not a judicial one. State ex rel. v. Hawkins, 44 Ohio St., 98.

The power of a notary to imprison witnesses is sustained on the ground that it is not the exercise of a judicial power. DeCamp v. Archibald, 50 Ohio St., 618.

The power of a county recorder to enter on his record that a lien is void by reason of lapse of time was declared unconstitutional, because it conferred on the recorder judicial power. State ex rel. v. Guilbert, 56 Ohio St., 575, 628.

Two cases in Ohio apparently seem to conflict with the above view. The first is State v. Cincinnati, 52 Ohio St. 419.

In that case, quoting from the opinion of Judge Williams: "There apears to be no constitutional obstacle in the way of investing a court or judge with such

[COPYRIGHT, 1901, BY CARL G. JAHN.]
VOL. 8—6

powers. Nor is there any valid objection to their due execution, if the court or judge chooses to perform them."

On page 452, Judge Williams says: "The legislature has, no doubt, empowered the courts and judges to perform these acts and others of like nature, because in that way the best public agencies necessary in carrying the legislation into effect, are most likely to be obtained; and we are not convinced, either that the legislative judgment in that regard is at fault, or that the legislative purpose must fail, at least, so long as the courts and judges charged with the performance of the act interpose and objection."

It may be inferred from that, that if the judges and courts do intrpose objections, the consequences might be otherwise.

The other case apparently in conflict with the foregoing view is, State v. Kendle, 52 Ohio St., 346.

In that case, it was held that a statute conferring power on the common pleas judges to appoint jury commissioners was constitutional; but in that case, it was held that jury commissioners were mere officers of the court, such as commissioners in chancery, and as are also in a general sense attorneys, and that the court of common pleas, in making the appointment, was really exercising a judicial act.

"Whether the exercise by the judiciary of the appointing power is an infringement on the constitutional separation of governmental functions is a question upon which the authorities are somewhat divided. A majority of the courts which have passed upon it, however, have held to the negative of the proposition and have sustained the exercise of such power." See 6 Am. & Eng. Ency., 1060.

While the courts have not, in the main, hesitated to declare unconstitutional all laws that attempt to impose judicial powers upon the executive or legislative branches of the government, and while, on the contrary, they have, with equal consistency, held in the main all laws unconstitutional that have attempted to impose legislative or executive powers upon the judiciary, when they have ascertained that a particular power sought to be conferred is clearly within the sphere of the powers of a co-ordinate branch of the government, still the courts have not always been at one as to whether a particular power belongs exclusively to one department of the government or to another. The difficulty exists in the very nature of things. Many of the powers of government seem incapable of exact definition, and courts have hesitated to say to what particular branch of the government a particular power might belong.

In State ex rel. v. Hawkins, 44 Ohio St., 112:

"Whether power, in a given instance, ought to be assigned to the judicial department is ordinarily determinable from the nature of the subject to which the power relates. In many instances, however, it may be appropriately assigned to either of the departments."

See also Am. & Eng. Ency., 1032.

But the question for consideration here is, whether the power or function sought to be conferred upon the probate court, to fix and determine the mode of use of the telephone company of the streets of the municipality so as not to incommode the public in the use of the same, is judicial in its nature or whether it is legislative merely.

Judge Cooley, in his work on Constitutional Limitations, page 111, drawing the distinction between judicial and legislative power, says:

"In fine the law is applied by the one and made by the other. To do the first, therefore—to compare the claims of parties with the law of the land before established—is in its nature a judicial act. But to do the last—to pass new rules for the regulation of new controversies—is in its nature a legislative act."

And upon page 112, the same author says:

"It is the province of judicial power also to decide private disputes between or concerning persons; but of legislative power to regulate public concerns, and make laws for the benefit and welfare of the state."

See 6 Am. & Eng. Ency., 1032, 1033, for further definitions of judicial and legislative power.

Clearly, it seems that the fixing and determining of the mode and manner in which the streets of a municipality shall be used and occupied is the prescribing of a rule, not a decision regarding a rule already established, not a determination of what the law is, but prescribing a law for the use of the streets; and hence such action on the part of a court is legislative in its nature, and not judicial. We are not without authority and adjudication on this point. Judge Cooley, in the same work above quoted, page 252, says:

"The corporation has the exclusive right to control and regulate the use of the streets of the city. In this respect, it is endowed with legislative sovereignty. The exercise of that sovereignty has no limit, so long as it is within the objects and trusts for which the power is conferred. An ordinance regulating a street is a legislative act, entirely beyond the control of the judicial power of the state."

And in 24 Am. & Ency. (1st ed.), 42, found in the foot notes: "The power of the common council of a city to author-ize the obstruction of streets and alleys is legislative in its character, and can only be exercised by an ordinance passed under the formalities required by law." That is quoted from 27 Ind. p. 394.

See also Dillon on Municipal Cor., secs. 656 698; Tiedeman Mun. Cor., secs. 289, 297; Police Regulations, Keney, 38; 12 Atlantic Rep., 144; 147 Am. St. Rep., 8.

In Keasby on Electric Wires, page 38, I find the following:

"Under the ordinary power to regulate streets, and in the absence of extraordinary immunities conferred on the company by its charter, city governments have the right to supervise and control the erection of telegraph lines and all lines of electric posts and wires in the streets. They may prescribe the size and shape and materials of the poles; they may designate the streets along which the lines shall go, and require a statement or map, showing the location of the several poles, to be submitted to the proper officers. In short, they may regulate the manner of the use of the streets, and take care that the power granted by the legislature to use the streets for these purposes is so used as not to interfere with the other lawful uses of the streets and not to cause danger or inconvenience to the public."

And in 12 Atl. Rep., 144, (Penn. case) it is held that the erection of telegraph poles is a matter of police regulation to be supervised or controlled by ordinance, as may seem proper. Erection of poles upon and stretching of wires along its streets is the right of the city, i. e., the city of Philadelphia. I find in the brief of counsel in that case, several cases are cited, showing that the exercise of such power is simply a police power.

On the exercise of a branch of the sovereignty delegated to the city by the state, and to the same effect, see also—8 Am. St. Rep., 545.

The case of the Norwalk Street Railway Co., 37 Atl. Rep., 1080, decided by the supreme court of Connecticut, 1897, is strikingly similar to the one at bar. The law of that state provides that, when the warden and burgesses of any borough, or the mayor and common council of any city, or the selectmen of any town should make any decision, denial, or order respecting the use and occupancy of any of the streets of any borough or city by any street railway company, the said company might take an appeal from such order or decision to the supreme court or any judge thereof; that the appeal should be tried by the court; that the judge of the court should make such order or decision regarding the use of the streets as

to the court might seem just and equitable.

Under that statute, appeal was taken by the Norwalk Street Railway Company from the decision of the common council, denying the right of the use of the streets by the railway company, to the supreme court, and the supreme court, in passing upon that case, in the syllabus, said:

"Under constitution 1818, art. 2, sec. 1, providing that the powers of government shall be divided into three distinct departments, the general assembly has no judicial power, and cannot confer such power on a court or on a judge thereof. Nor can a court or jugde thereof exercise a power not judicial."

Quoting from page 1085: "These mandates are the voice of the sovereign, speaking with a present authority, from which there is no escape. The incapacity of the legislature to execute a power which is essentially and merely a judicial power, and of the judiciary to execute a power which is essentially and merely a legislative power, as well as the limitation of the meaning of legislative power, by force of certain primary principles of government plainly embodied in the constitution, and by the necessities involved in the separation and independence of distinct departments of government, is fundamental to the very existence of constitutional government."

Further down on the same page: "The supreme court of the United States has uniformly held that a law conferring on the courts a power which is not a judicial power, within the meaning of the constitution, is unconstitutional. Such a power cannot be lawfully exercised by the court."

On page 1087, quoting from the opinion, the following: "There can be no doubt that making such regulations, i. e., regulations for the use of the streets by street railways, is essentially and distinctively a legislative function. It is also certain that judicial power does not include the exercise of such a legislative function, and that the duty of making such regulations cannot be imposed upon the superior court, because it involves the exercise of legislative power by the court, and because a power in the legislature to impose such dutie is inconsistent with the existence of an independent and separate judicial department of government."

But it is claimed by counsel for plaintiff in error that sec. 8, art. 4, of the constitution authorized the grant of jurisdictional power to the probate court, and hence, the legislature is authorized by the constitution to confer upon the probate court the function or duty provided in sec. 3461, Rev. Stat. But the constitution must be enterpreted like every other written instrument. All of its provisions must be considered together, and sec. 8 must be construed with sec. 1 of the same article, which provides that, judicial power is vested in the supreme court, circuit courts, common pleas, probate courts, and other courts, as the legisature may from time to time establish. While the legislature may establish a court, clearly a court cannot, under this provision, have other than judicial jurisdiction, and no other can be conferred by the legislature.

In the case which I have cited at the outset of the opinion, Western Union Telegraph Co. v. Myatt, 98 Fed. Rep., a question was raised regarding the constitutionality of a law passed by the legislature, creating in Kansas, a court of visitation, authorizing that court to regulate freight charges and tolls of telegraph and telephone lines.

The constitution of Kansas is almost identical with ours. Section 1, art. 1, of the Kansas constitution provides:

"The executive department shall consist of a governor, lieutenat governor, secretary of state, auditor of state, attorney general, and superintendent of public instruction."

Section 1, art. 2: "The legislative power of this state shall be vested in a house of representatives and senate."

Section 1, art. 3: "The judicial power of this state shall be vested in the supreme court, district courts, probate courts, justices of the peace, and such other courts inferor to the supreme court, as may be provided by law."

Almost identical with our own in these respects.

Now, in this case, it was held by the circuit ccurt of the United States, as follows:

"The provisions of the constitution of Kansas, designating the separate departments in whom shall be vested, respectively, the executive, legislative and judicial powers of the state, as construed by the supreme court of this state, in harmony with the uniform construction given the similar provisions of the federal constitution, contemplate that each department shall be separate and independent of the others, and forbid the uniting of such powers in the same officer or tribunal in respect of the same subject matter."

And paragrahp 3 of the syllabus of that case is:

The court of visitation of Kansas, created by act of January 3, 1899, and given by that act and by chapter 36 of the laws of the same session, general power to regulate the business of railroad and telegraph lines within the state, among others the power to classiffy freight, require the construction and maintenance of depots, regulate crossings and intersections of railroads, and the operation of trains, require the

use of improved appliances, to prescribe schedules of rates, is, in the exercise of such powers, a legislative and administrative body."

Now, if the legislature can, in a single instance, impose any part of its own legislative jurisdiction or functions upon a court, then by a parity of reasoning, the legislature can divest itself of all its power, and confer it upon the courts. It is not doubted that the legislature can delegate its own or a portion of its own power over the streets to a minor legislative body, to the council of a city, or possibly may delegate portions of its powers to boards, but the spirit of the constitution, if not the exact letter of the constitution, forbids the delegation of any of its powers to the courts, and the courts may not both legislate and decide.

Upon reason and authority, therefore, it seems clearly established that sec. 34 1. Rev. Sta., seeks to confer legislative authority upon the probate court. While perhaps third parties could not complain, if the probate court saw fit to undertake the exercise of that power, yet the court may well say that it would decline to exercise it; because it imposes on it a duty that the legislature had no constitutional right to impose. Therefore, in dismissing the petition and in holding sec. 3461, Rev. Stat., unconstitutional, it committed no error. The judgment of the court below will, therefore, be affirmed.