ASHTON-JENKINS CO. v. BRAMEL, Judge.

No. 3493.   Decided July 27, 1920.   (192 Pac. 375.)

1.  QUIETING TITLE—STATE MAY AUTHORIZE PROCEEDINGS IN REM. The state has the power, for the purpose of settling and quieting title to real property within its limits, to authorize proceedings in the nature of actions in rem.

2.  CONSTITUTIONAL LAW—TORRENS ACT HELD NOT UNCONSTITUTIONAL AS DENYING DUE PROCESS. Uniform Land Registration Act, providing for registration of title under the Torrens system, after personal service on all interested persons made known to court at any time before final decree, and who are residents under the state not under disability, and for publication of notice of hearing in the same manner and with the same effect as in other proceedings in rem, held constitutional as against the contention that, because of insufficiency of notice to interested parties, it permits the taking of property without due process of law, in view of section 6551, Comp. Laws 1917.

3.  CONSTITUTIONAL LAW—NECESSITY OF STATUTE NOT CONTROLLING ON QUESTION OF CONSTITUTIONALITY. The necessity or want of necessity of a statute in a particular case is not a controlling factor on question of the constitutionality of the statute.

4.  COURTS—SUPREME COURT NOT BOUND BY OPINION OF COURTS OF OTHER STATES. The Supreme Court is not bound by the majority or unanimous opinions of the courts of a sister state, or by the unanimous opinion of the courts of all the states.

5.  CONSTITUTIONAL LAW—TORRENS ACT NOT UNCONSTITUTIONAL AS CONFERRING JUDICIAL AUTHORITY ON REGISTRARS OF TITLE. Uniform Land Registration Act, providing for registration of title

under the Torrens system, *held* not to confer judicial authority on county clerks as ex officio registrars of title, in violation of Const. art. 5, section 1, the duties of the registrars of title being ministerial and not judicial.

Mandamus by the Ashton-Jenkins Company against *Wm. H. Bramel*, as judge of the district court of Salt Lake county.

PEREMPTORY WRIT GRANTED.

*Moyle & Ray*, of Salt Lake City, for plaintiff.

*D. A. Skeen*, Asst. Co. Atty., of Salt Lake City, for defendant.

THURMAN, J.

This is an application for a writ of mandate to compel the defendant, as judge of the district court of Salt Lake county, to direct the clerk of said court, as registrar, to issue to plaintiff a certificate of title under the provisions of the ''Uniform Land Registration Act,'' commonly called the ''Torrens Law.''

Defendant demurs to the complaint on the grounds that the act in question is obnoxious to the provisions of both the federal and state Constitutions, which prohibit the taking of property without due process of law, and also violates other provisions of the state Constitution in that it attempts to confer judicial authority upon the county clerks who are ex officio registrars of title.

Comp. Laws Utah 1917, sections 4920 to 5008, inclusive, contain the provisions of the act, and the following provisions are deemed material to the questions here presented. The substance only will be stated:

(1)  Exclusive original jurisdiction is conferred on the district courts of the state, with plenary powers, both in law and equity, in all matters pertaining to registration. (2) The proceeding is in rem, and a jury may be had by any interested party on demand. (3) Rehearing and appeal are

allowed as in other cases.   (4)   County clerks shall be ex officio registrars of title, whose duties shall be performed under the direction of the court, and who shall perform such other duties as the court may prescribe.   (5)   The court shall appoint one or more attorneys at law to be examiners of title, prescribe their duties, and require them to report their findings of fact to the court.   (6)   Suits shall be brought by petition to the court, showing that petitioner is the owner of the land or has the power to dispose of it.   (7) Infants and other persons under disability may sue or defend by guardian or trustee, and corporations by an officer duly authorized; nonresident petitioners shall appoint a resident agent upon whom process and notice may be served. (8)   Except as otherwise provided in the act, the suit shall be subject to the general rules of pleading and practice in such courts.   (9)   The petition must be signed and sworn to by the petitioner.   (10)   The petition must show the description of the land, with the improvements thereon, when, how, and from whom acquired, whether or not it is occupied, an enumeration of all liens, interests, and claims, adverse or otherwise, and the full names and addresses if known, of all persons interested by marriage or otherwise, including adjoining owners and occupants.   The petition shall also be accompanied by a plan made in accordance with the rules of the court.   (11)   Notice of lis pendens shall be filed with the petition.   (12)   Upon filing the petition the court must refer it to one of the examiners; the report of the examiner shall include an abstract of title and all other evidence that can be obtained by the examiner, also full extracts from the records, with names and addresses, as far as ascertained, of all persons interested in the land as well as adjoining owners and occupants showing their several interests, and indicating upon whom and in what manner process shall be served or notice given in accordance with the provisions of the act. (13)   Notice to all persons named in the report, and "to all whom it may concern," shall be published and posted in the county where the land lies in the same manner and to the same effect as an order of publication in other proceedings

in rem. ' (14)  A copy of the order of publication shall be mailed by registered letter, demanding a return, to every interested party named in the petition or in the report of the examiner whose address is given or known.  (15)  An attested copy of the order must be posted in a conspicuous place on each parcel of the land, and the sheriff is required to go upon the land and ascertain and report to the court the names and addresses of any persons actually occupying the premises under claim of title.  (16)  If public rights or interests are involved, the order of publication must be personally served upon the proper attorney of the state, county, or city.  (17)  The court may cause other or further **notice to** be given in such manner and to such person as it may deem proper.  (18)  Such personal service as is required in equitable actions shall also be made upon residents of the state not under disability who are made known to the court before final decree and can be reached by its process, unless such service be waived by appearance or **otherwise.**  (19)  The notices, except the last referred to above, shall be in lieu of personal service and binding on all the world.  (20)  Certificates of the registrar and sheriff, or their deputies, showing due execution of the order of publication and the mailing and posting of copies thereof, as required in the act, shall be filed in the cause and be conclusive proof of service.  (21)  After the expiration of at least fifteen days from the publication and posting of the order of publication the cause shall be set down for hearing; thereupon the court shall appoint a competent attorney at law, of the county in which the land lies, as guardian ad litem for all persons under disability, not in being, unascertained, unknown, or out of the state who may have, or appear to have, an interest in, or claim against, the land.  (22) Any person having an interest in or claim against, the land, whether named in the petition and order of publication or not, may appear and file an answer at any time before final decree unless such person has been served personally with notice.  The answer shall be under oath.  (23)  After the expiration of fifteen days from the jublication and posting

of the order of publication the court may proceed to take such action as may be proper upon the report of the examiner, and all other evidence before it with reference to the rights of all persons appearing to have any interest in, or claim against, the land, and may refer the cause again for further proof. (24) If the court after final hearing is of opinion that the petitioner has title proper for registration, a decree of confirmation and registration shall be entered, and such decree so entered shall bind the land and quiet the title thereto except as provided in the act; it shall be forever binding and conclusive upon all persons, resident and nonresident, including the state, whether mentioned by name in the order of publication or included under the general description "to all whom it may concern"; it shall not be attacked or opened or set aside by reason of the absence, infancy, or other disability on any person affected thereby, nor by any proceeding at law or in equity for rehearing or reversing judgments or decrees except as provided by the act.

Provisions of the act subsequent to the decree will not be referred to unless the same are deemed material in the course of this opinion.

The questions presented by the demurrer, as far as the act in question is concerned, have never before been called to the attention of the court, but similar statutes in other states have been the subject of judicial investigation many times during the last quarter of a century. It cannot be said that the case is one of first impression. The statutes of the several states which have adopted the principle of the Torrens land law are strikingly similar. They all have a common purpose. As stated in 3 Devlin, Real Estate (3d Ed.) section 1439, "The object is to secure the evidence of title exclusively by a certificate issuing from public authority"; or, as stated by the court in *State ex rel. Douglas* v. *Westfall*, a Minnesota case, 85 Minn. at page 439, 89 N. W. at page 175, 57 L. R. A. at page 299 (89 Am. St. Rep. 571), "The basic principle of this system is the registration of the title of land, instead of registering, as the old system requires, the evidence of such title." A more terse statement,

and one perhaps equally clear, is that contained in defend-
ant's brief. "Its essential point is an official guarantee of
title." Under the old system a deed absolute on its face is
only one link in the chain of evidence by which the holder
must establish his title. Under the Torrens system and stat-
utes modeled thereon the registered certificate is conclusive
evidence of the holder's title. It imports the sanctity of a
final adjudication by a court of competent jurisdiction.
That is the ultimate purpose of the statutes. It is not our
purpose, however, to attempt either a critical or historical
review of the Torrens system. A very illuminating discus-
sion in that regard is found in chapter 40, Devlin, Real
Estate, supra, to which the reader's attention is invited.

The only question to be determined is the constitutionality
of the law. The defendant's argument is exceedingly brief.
The exact point of his objection as to the question of due
process is not clearly defined. He calls our attention to the
case of *State* v. *Guilbert,* 56 Ohio St. 575, 47 N. E. 551, 38
L. R. A. 519, 60 Am. St. Rep. 756, and says the reasoning
of that case aptly applies to the point raised in the case at
bar. Defendant quotes at great length from the opinion
mentioned, from which we conclude that he adopts not only
the conclusions, but also the reasons, given by the court.
The court in that case held the Ohio Torrens Act (Act April
27, 1896; 92 Ohio Laws, p. 220) to be unconstitutional on
several grounds, among which are substantially those raised
by the demurrer in the instant case. Before concluding, we
will have occasion to compare the Ohio statute with that of
our own state for the purpose of determining to what extent
the case relied on by defendant should be considered as per-
suasive on the questions here presented.

Defendant's first contention in the present case is that the
act tends to permit the taking of property without due proc-
ess of law. The contention seems to be that the notice to
interested parties is insufficient and the manner of service
inadequate; that it is not the usual common-law process con-
templated by the Constitution in cases cognizable at common
law. In this connection defendant, by implication at least,

contends that the proceeding is an action in personam, in which personal service is required upon all interested persons residing within the state, notwithstanding the fact that the act itself declares the proceeding to be an action in rem. Whether or not the proceeding is in personam or in rem is perhaps a question upon which the authorities differ. We are not disposed to indulge in hair-splitting distinctions. It is sufficient to say that respectable authority can be found to the effect that the state has the power, for the purpose of settling and quieting title to real property within its limits, to authorize proceedings in the nature of actions in rem, and I assume it would be difficult to conceive of a logical reason against the exercise of such authority. In *Robinson* v. *Kerrigan*, 151 Cal. 40, 90 Pac. 129, 121 Am. St. Rep. 90, 12 Ann. Cas. 829, a California case arising under a statute similar to ours, and in which the same questions were raised, the court, 151 Cal. at page 46, 90 Pac. at page 131 (121 Am. St. Rep. 90, 12 Ann. Cas. 829), says:

"The state has full control over the subject of the mode of transferring and establishing titles to property within its limits. For these purposes the state has power to provide a special proceeding, in the nature of a proceeding in rem, to fix the status of the land, and declare the nature of the titles and interests therein, and the person or persons in whom such titles and interests are at the time vested. It may do this whenever it may be considered necessary or likely to promote the general welfare."

Concrete application of that doctrine was made in the case referred to in which the form of notice and manner of service was substantially similar to that provided in the Utah statute.

Another case from the same state enunciating similar doctrine is that of *Title & Document Restoration Co.* v. *Kerrigan*, 150 Cal. 289, 88 Pac. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199. This case arose under an "Act to provide for the establishment and quieting title to real property in case of the loss and destruction of public records." The act was not modeled upon the Torrens land law, but the form of notice and manner of service is substantially the same as that complained of here, and the objection was made that it violated both the federal and state Constitutions. In the

course of its opinion the court, 150 Cal. at page 310, 88 Pac. at page 360 (8 L. R. A. [N. S.] 682, 119 Am. St. Rep. 199), says:

"While it is true, as a general proposition, that an action to quiet title is an action in equity, which acts upon the person, it is also true that the state has power to regulate the tenure of immovable property within its limits, the conditions of its ownership, and the modes of establishing the same, whether the owner be citizen or stranger. While a decree quieting title is not in rem, strictly speaking, it fixes and settles the title to real estate, and to that extent certainly partakes of the nature of a judgment in rem."

In *State* v. *Westfall*, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. Rep. 571, a Minnesota case arising under an act similar to ours, and in which the notice and manner of service are substantially the same, the court had occasion to deal with· the identical question presented in the instant case. The court, 85 Minn. at page 444, 89 N. W. at page 177, 57 L. R. A. at page 301 (89 Am. St. Rep. 571), says:

"It is now the settled doctrine of this court that the district courts of this state may be clothed with full power to inquire into and conclusively adjudicate the state of the title of all land within their respective jurisdictions, after actual notice to all of the known claimants within the jurisdiction of the court, and constructive notice, by publication of summons, to all persons or parties, whether known or unknown, having or appearing to have some interest in or claim thereto. The proceeding provided for by the act in question is such a one. It is substantially one in rem, the subject-matter of which is the state of the title of land within the jurisdiction of the court, and the provisions of the act for the serving the summons and giving notice of the pending of the proceeding are full and complete, and satisfy both the state and federal Constitutions. To hold otherwise would be·to hold that the courts of this state cannot in any manner acquire jurisdiction to clear and quiet the title to real estate by a decree binding all interests and all persons or parties, known or unknown, for the provisions of this act are as full and complete as to giving notice to all interested parties as it is  *  *  *  possible to make them. That the courts of this state have jurisdiction to so clear and quiet title by their decrees is no longer an open question in this state." (Citing many cases.)

We see no escape from the logic of these opinions. To the

writer it seems to be incontrovertible.  Even counsel for defendant agrees with the fundamental proposition that the state has "jurisdiction over all persons and property within its territory, and has power to regulate the manner and conditions upon which property may be acquired, enjoyed, and transferred," but says "the power must be exercised in a proper and reasonable manner."  He contends that the taking of property as contemplated by the Torrens Act, · under the rules and procedure therein laid down, is not a reasonable exercise of power.  Counsel, however, fails to state or point out to the court what more the Legislature could have done, what provision it could have added or inserted to render the act invulnerable against the objections raised as to its constitutionality.  The act provides for personal service upon residents of the state, not under disability, who are made known to the court before final decree, and who can be reached by its process.  The question is, how can a resident of the state who is unknown and whose whereabouts are unknown be personally served with notice?  If personal service in such cases, is impossible, what better method can be adopted than that provided in the act as notice to unknown persons and persons beyond the jurisdiction of the court?  To hold that personal service must be made upon residents who are unknown is to require a palpable impossibility.  To hold that unless the statute provides for personal service in such cases the statute is unconstitutional is equivalent to holding that any law modeled upon the Torrens system, no matter what its safeguards may be, is impossible under the American system of government.  Such, however, in effect is the holding of the Ohio court in the case to which we have referred.  I apprehend the courts as a rule in this country will be very reluctant in arriving at any such conclusion.  Such a conclusion, from every point of view, is incompatible with the power and dignity of a sovereign state.  There must be somewhere lodged in the state the power to forever settle and quiet title to land within its territorial limits.  When the state has done all that is within its power to provide process reason-

ably well calculated to give notice to interested parties, both within and without the state, for the purpose of settling and quieting title to lands within its territorial limits, to say that such process is in violation of the Constitution is, in effect, to deny the state a necessary sovereign power.

It will not be contended that statutes of limitation and statutes conferring title by adverse possession are unconstitutional, notwithstanding they may deprive a person of vested rights without even the semblance of judicial proceeding. Such statutes are denominated statutes of repose, and notwithstanding their drastic effect they are considered as necessary and expedient for the general welfare.

But counsel for the defendant, in his criticism of cases upholding the Torrens system and statutes analogous, in his brief says:

"It will be noted, and it is a significant fact, that in almost every state where the Torrens law has been upheld on this ground, there has been some emergency or exigency or necessity to which the court has turned as a justification for the exercise of the power of the state in this way."

Counsel then refers to the statute of Illinois, and the case of *Bertrand* v. *Taylor*, 87 Ill. 235, which referred to the destruction of records by the Chicago fire as a reason for upholding the act. In like manner counsel refers to the San Francisco earthquake, with its destructive consequences, as a reason why the court upheld the act. It is not an unusual thing for a court in stating its reasons for upholding a law to point to the necessity for it in the particular case, and, if there should happen to be an emergency to which the court can refer, it is quite probable that such emergency will not be overlooked. It does not follow, however, that because the court refers to a particular emergency that it thereby makes such emergency a controlling factor in deciding the case. One of the very cases to which counsel refers, *Title & Document Restoration Co.* v. *Kerrigan*, heretofore cited, illustrates the point we are attempting to make. The statute under review in that case was no doubt enacted primarily as a relief measure in consequence of the disastrous earth-

quake of 1906 in San Francisco, which destroyed the public records containing evidences of title to land.   In determining the issues raised in that case, which were substantially the same as in the present case, the court at page 305 of 150 Cal., at page 358 of 88 Pac. (8 L. R. A. [N. S.] 682, 119 Am. St. Rep. 199), says:

"It is also matter of common knowledge that in the city and county of San Francisco, at least, if not in other counties, the disaster of April last worked so great a destruction of the public records as to make it impossible to trace any title with completeness of certainty.   That some provision was necessary to enable the holders and owners of real estate in this city to secure to themselves such evidence of title as would enable them, not only to defend their possession, but to enjoy and exercise the equally important right of disposition, is clear.   *These considerations are suggested, not with a view to arguing that the necessity for some act of this kind affords any ground for disregarding constitutional provisions, if the statute be found to conflict with such provisions, but rather as a guide to determine the real scope and purpose of the act, and to emphasize the rule, so often laid down by all the courts, that in passing upon the constitutionality of an act of the Legislature every presumption and intendment in favor of the validity of the enactment are to be given effect.*"   (Italics ours.)

This states the proposition in a nutshell.   Besides this, since when did the courts of this country become possessed of the power to determine the necessity of a statute or want of necessity in any particular case, and make that the controlling factor in determining whether or not the statute was unconstitutional?   Such power does not belong to the courts.   It is forbidden ground, upon which they dare not tread.   The proposition is elementary.   Authorities need not be cited, but see *Rio Grande Lumber Co.* v. *Darke*, 50 Utah, 114, 167 Pac. 241; L. R. A. 1918A, 1193.

The courts of California and Minnesota are not the only ones in this country that have had occasion to pass upon the constitutionality of the principle involved in the Torrens law.   The Massachusetts statutes, as regard the form of notice to interested parties and manner of service, except as to personal service on known interested residents of the state,

is almost identical with the corresponding provision of the Utah statute. In *Tyler* v. *Judges of the Court of Registration*, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433, the very questions presented here were thoroughly investigated and determined in favor of the constitutionality of the law. Mr. Chief Justice HOLMES delivered the opinion of the court, and, after stating the provisions of the statute relating to notice, said:

"It will be seen that the notice is required to name all persons known to have an adverse interest, and this, of course, includes any adverse claim, whether admitted or denied, that may have been discovered by the examiner, or in any way found to exist. Taking this into account, we should construe the requirement in section 21, concerning the application, as calling upon the applicant to mention, not merely outstanding interests which he admits, but equally all claims of interest set up, although denied by him. We mention this here to dispose of an objection of detail urged by the petitioner, and we pass to the general objection that, however, construed, the mode of notice does not satisfy the Constitution, either as to persons residing within the state upon whom it is not served, or as to persons, residing out of the state and not named.

"If it does not satisfy the Constitution, a judicial proceeding to clear title against all the world hardly is possible; for the very meaning of such a proceeding is to get rid of unknown as well as known claims—indeed, certainty against the unknown may be said to be its chief end—and unknown claims cannot be dealt with by personal service upon the claimant. It seems to have been the impression of the Supreme Court of Ohio, in the case most relied upon by the petitioner, that such a judicial proceeding is impossible in this country. *State* v. *Guilbert*, 56 Ohio St. 575, 629, 47 N. E. 551. But we cannot bring ourselves to doubt that the Constitutions of the United States and of Massachusetts, at least, permit it as fully as did the common law. Prescription or a statute of limitations may give a title good against the world, and destroy all manner of outstanding claims, without any notice or judicial proceeding at all. Time, and the chance which it gives the owner to find out that he is in danger of losing rights, are due process of law in that case. *Wheeler* v. *Jackson*, 137 U. S. 245, 258, 11 Sup. Ct. 76, 34 L. Ed. 659."

Then follows a lengthy discussion covering both the question of due process and whether or not the act confers judicial power upon ministerial officers, which was one of the

grounds of objection.  The proceeding was for a writ of prohibition to prevent the judges of the court of registration from proceeding under the act.  The statute was upheld and the petition denied.

The Supreme Judicial Court of Massachusetts upheld the statute of that state upon the question of due process against objections urged as to its constitutionality, notwithstanding personal service upon known residents of the state was not required.  In that respect the process provided by the Utah statute is more complete and more in harmony with the process known at common law than is that provided by the statute of Massachusetts.  The Massachusetts court of last resort is, and ever has been, one of the oldest, ablest, and most learned courts in this country.  It is a court of remarkably high standing and is not inclined to encourage innovations.  Its decisions are usually entitled to great respect, especially on questions involving constitutional law.  Mr. Justice LORING filed a dissenting opinion.  This opinion, although dissenting from the views of the majority of the court, is one of the most learned and entertaining opinions of any we have read in the progress of our investigation. It is well worth careful consideration by any one desiring a thorough understanding of both sides of this interesting question.  Nevertheless, it is only a dissenting opinion, and therefore entitled to but little weight in determining the law as it exists at the present time in the several jurisdictions of the country.  This is a country in which majority rule is the chief cornerstone of our political institutions.  The principle applies to the decisions of our courts of last resort the same as it does to the ultimate conclusions of other departments of the government, where the determination of questions is confided to the judgment of more than one.

It is true that this court is not absolutely bound by either the majority or unanimous opinion of the court of a sister state; neither would it be bound by the unanimous opinion of the courts of all the states.  But it will not be denied that if the court in any given case can ascertain        4 with reasonable certainty the preponderance of judi-

cial opinion upon the particular questions involved, and will adopt that as its guide, it will not ordinarily go far astray in arriving at a correct conclusion.

There is an opinion from another jurisdiction not heretofore considered. The first state to adopt the Torrens system of registration was Illinois. Its first act, passed in 1895, was declared unconstitutional in *People* v. *Chase,* 165 Ill. 527, 46 N. E. 454, 36 L. R. A. 105. The objection was that the statute attempted to confer judicial power on the registrar, in violation of the state Constitution. After the decision in the *Chase* Case a second statute was enacted intended to obviate the objection raised against the first. The constitutionality of the new statute was assailed in *People* v. *Simon,* 176 Ill. 165, 52 N. E. 910, 44 L. R. A. 801, 68 Am. St. Rep. 175. The same objection was made as was made in the *Chase* Case, and in addition thereto it was contended that the act permitted the taking of property without due process of law. The process provided for bringing interested parties before the court is very similar to that provided in the Utah statute. In passing upon this objection the court said:

"The second point insisted upon in the argument is that the provisions of the act permit the taking of private property without 'due process of law.' In the initial registration the provisions are for an application to a court of chancery, and that the fee must be first registered. To this application the following persons are to be made defendants: The occupant, if the land is occupied by any other person than the applicant; the holder of any lien or incumbrance; other persons having any estate or claiming any interest in the land, in law or in equity, in possession, remainder, reversion, or expectancy. Section 11. All other persons are to be made parties defendant by the name and designation of 'all whom it may concern.' Section 16. Summons is to issue against all persons mentioned as defendants, and is to be served as in other cases in chancery. Notice is also to be published and mailed to such defendants substantially as in other chancery cases, and the court may direct further notice to be given. Section 19-21. Upon a failure to answer default may be entered, and upon the hearing a decree entered finding in whom the title is vested, and declaring the same subject to such liens, incumbrances, trusts or interests, if any, as are shown to exist, and directing the registration to be made. Sections 23, 25. The exception taken to these provisions is that they authorize judgment to be taken against

a resident of the state upon mere constructive service. It is certainly fundamental that no man shall be condemned unheard or without notice. While a substituted service is permitted in some instances, particularly in case of nonresidents, this is because of the necessities of the case. The act does contemplate in some contingencies at least, actual personal service, and the general law provides for publication as to unknown owners and persons in interest and nonresidents. An applicant may proceed in this way, and in strict accordance with the act obtain a decree or finding as to his title which will be binding beyond all question, so that even if the proper construction of the provisions were that it attempted to authorize judgment against a resident notified ouly by publication, yet the law can be given practical effect, in which event only the particular provision would fail, and not the whole law."

It thus appears the Illinois court upon the question of due process—that is, the form of notice and the manner of service—upheld the act with some reservation. It did not sustain it to the full extent as did the courts of California, Massachusetts, and Minnesota, but it held that the law could be given practical effect even though some particular provision might fail.

As far as we have been able to ascertain, we have now briefly considered all the cases arising under statutes adopting the Torrens system which tend to show the present state of judicial opinion. As suggested near the beginning, we have yet to make the comparison between the Ohio Torrens act and the Utah statute for the purpose of determining the difference between the two as it relates to the question of due process. We do this because the case of *State* v. *Guilbert*, supra, which declared the Ohio statute to be unconstitutional, is apparently the only case relied on by defendant. That decision appears to stand singly and alone on that side of the question, except as it is partially supported by the Illinois case to which we have referred.

The statute of Ohio provides that the application must contain an accurate description of the land, and, among other things, the full name and post office address of the person owning the adjoining property, the full name and address of the persons occupying the property to be registered, the kind and nature of the estate, with the full name and address

Ashton-Jenkins Co. v. Bramel, 56 Utah 587

of the persons holding such estates. The application shall contain such further statements as the act may require or as may be required by the court. On the question of notice to interested parties after the application is filed, the statute provides, in effect, that notice shall be given by publication in some newspaper of general circulation in the county for the period of four consecutive weeks, to all whom it may concern. The notice shall state the name of the applicant, a description of the land, the time fixed for the hearing, and notice that if the party has any claim or interest in, or lien upon said land, or knows of any reason why such land should not be registered, or wishes to file objection thereto, he is required to appear and assert his claim, etc., or the said lands will be ordered registered. The publisher shall file with the court as many copies of the notice as the court may require for service, and the court shall require the applicant or some other competent person to serve each person named in the application residing within the county with a copy of said notice. And persons residing without the county must be served by sending a copy by mail. Proof of service is substantially the same as required by the Utah statute. Such is the character of process and the mode and manner provided in the Ohio law for bringing parties interested before the court.

The Utah statute, as we have seen, requires (1) a notice of lis pendens filed with the petition; (2) notice shall be published in the same manner and with the same effect as the other proceedings in rem, and shall be addressed to all persons named in the report of the examiners and "to all whom it may concern"; (3) the notice shall be published in the county where the land lies, and a copy of the order of publication shall be mailed by registered letter, demanding a return, to every interested party named in the petition or in the report of the examiner whose address is given or known; (4) an attested copy of the order must be posted in a conspicuous place on each parcel of the land; (5) such personal service as is required in equitable actions must also be given to residents of the state, not under disability, who

are made known to the court at any time before final decree, unless the service is waived; (6) the court may cause other or further notice to be given in such manner and to such persons as it may deem proper.

It requires no extended argument to demonstrate the fact that the Ohio statute might well be declared unconstitutional on the question of due process while the statute of Utah as to the same question might be upheld and sustained.   The Ohio statute made no attempt whatever to provide for personal service on residents of the state except those within the county where the land is situated.   It mentions no names of parties interested, but is addressed generally ''to all whom it may concern.''   It makes no provision for posting notice on the land, nor does it provide that the court may direct other or further notice in such manner and to such persons as it may deem proper.   We do not consider the Ohio case as authority in any sense persuasive on the question presented for determination.

As we understand the question, the real point of the objection is that personal service is not required on all residents of the state; that if residence in the state is not made known to the court before final decree, then such persons are placed in the same category as nonresidents of the state and need only be served by publication.

In this connection it is pertinent to suggest that service by publication upon unknown parties, whether in the state or without, has been provided for and recognized by the statutes of this jurisdiction since long before the state was admitted into the Union.   Comp. Laws Utah 1888, section 3210; Rev. Stat. Utah 1898, section 2951; Comp. Laws Utah 1907, section 2951; Comp. Laws Utah 1917, section 6551.   The sections referred to all provide for publication of summons to unknown persons within or without the state under the circumstances therein stated, and as far as the writer's information extends their constitutionality has never been questioned.   This is not intended as a conclusive reason why the act in question should be upheld.   The purpose of the act is to bind the whole world, and settle forever the title

to the land against any and all persons whomsoever. For this reason it may be contended that the consequences are more drastic and more far reaching than might necessarily result from the operation of the statutes to which we have referred. In answer to this supposed contention, it is pertinent to remark that the statutes referred to were intended to have the same conclusive effect as to unknown parties as does the statute under which the present proceeding was commenced. The sections cited in all the compilations and revisions above referred to conclude as follows:

"After the completion of service by such publication, the court shall have jurisdiction of such persons, and any judgment or decree rendered in the action shall apply to and conclude such persons with respect to such interest in the subject-matter of the action."

So that it must be conceded, if the so-called Torrens Act of Utah is unconstitutional in attempting to serve unknown residents of the state by publication only, then we have been handing down from compilation to compilation of our statutes for more than a quarter of a century a statute that is unconstitutional, and one in which the constitutionality has never been questioned. If the law under review is unconstitutional the section referred to in the present compilation is unconstitutional, the knowledge of which tends to emphasize the grave importance of the question we are called upon to decide.

The only substantial reason that we can give for the justification of constructive service on nonresidents of the state outside the jurisdiction of the court is because it is the only way in which service can be made. The same reason can be invoked in case of a resident of the state who is unknown and whose whereabouts are unknown, and who nevertheless may be in being and interested in the subject-matter of the suit.

*Arndt* v. *Griggs,* 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918, a case arising under a statute of Nebraska enacted for the purpose of quieting title to lands within the state, contains an interesting discussion as to the power of a sovereign state to provide special proceedings for quieting title to land

within its limits.  It is true that case relates to service upon
nonresidents by publication, but if we are right in our con-
tentions that the same reasons exist for similar service on
a resident who is unknown and whose residence is unknown,
especially in an action to settle and quiet title to land, then
the case of *Arndt* v. *Griggs* is pertinent to the case at bar.

In that case the statute of Nebraska provided a special
proceeding for the quieting of title to land within the state,
and among other things provided for service upon nonres-
idents by publication.  It was contended by counsel who in-
voked the Constitution against the sufficiency of the service
that an ''action to quiet title is a suit in equity; that equity
acts upon the person; and that the person is not brought
into court by service of publication alone.''  In response
to this contention Mr. Justice BREWER, speaking for the
court, said:

"While these propositions are doubtless correct as statements
of the general rules respecting bills to quiet title and proceedings
in courts of equity, they are not applicable or controlling here.
The question is not what a court of equity, by virtue of its general
powers and in the absence of a statute, might do, but it is, what
jurisdiction has a state over titles to real estate within its limits,
and what jurisdiction may it give by statute to its own courts to
determine the validity and extent of claims of nonresidents to
such real estate?  If a state has no power to bring a nonresident
into its courts for any purposes by publication, it is important to
perfect the titles of real estate within its limits held by its own
citizens; and a cloud cast upon such title by a claim of a non-
resident will remain for all time a cloud, unless such nonresident
shall voluntarily come into its courts for the purpose of having it
adjudicated.  But no such imperfections attend the sovereignty of
the state.  It has control over property within its limits and the
condition of ownership of real estate therein, whether the owner
be stranger or citizen, is subjection to its rules concerning the hold-
ing, the transfer, liability to obligations, private or public, and the
modes of establishing titles thereto.  It cannot bring the person
of a nonresident within its limits—its process goes not out beyond
its borders—but it may determine the extent of his title to real
estate within its limits, and, for the purpose of such determination,
may provide any reasonable methods of imparting notice.  The
well-being of every community requires that the title of real estate
therein shall be secure, and that there be convenient and certain

methods of determining any unsettled questions respecting it. The duty of accomplishing this is local in its nature; it is not a matter of national concern or vested in the general government; it remains with the state; and, as this duty is one of the state, the manner of discharging it must be determined by the state, and no proceeding which it provides can be declared invalid, unless in conflict with some special inhibitions of the Constitution or against natural justice."

*Hamilton* v. *Brown*, 161 U. S. 256, 16 Sup. Ct. 585, 40 L. Ed. 691, in my opinion, is more in point. That case arose under a statute of Texas providing for the escheat of lands of one who dies seized of real estate leaving no heirs, etc. The act required notice to all persons named in the petition and to "all persons interested in the estate." This notice was to be published four weeks in a newspaper published within the state. In this proceeding judgment of escheat was entered, and the property sold as the statute provided. Years afterward appellants, as heirs of the deceased owner, brought an action to recover the property from defendants, who were in possession under the escheat proceedings. Defendants answered and set up as a defense the escheat proceedings, including the form of notice and manner of service. Plaintiffs demurred to the answer and the demurrer was overruled. Plaintiffs appealed. Mr. Justice GRAY delivered the opinion of the court, in the course of which he said:

"The purpose for which proceedings of this character are instituted is to have a judicial declaration, in the form of a solemn judgment made by a court having jurisdiction of the subject-matter, and of the persons in interest in so far as publication can give it, that the facts exist which, under the law, cast title upon the state to property, which, at some former time (in case of lands), it had clothed a person with."

On the same page the court said:

"The proceeding, while not strictly a proceeding in rem, has many of its characteristics; yet the statute does not direct a seizure of the thing, which, in some cases, has been held to support a judgment strictly in rem."

Finally, on pages 274 and 275 of 161 U. S., on page 592 of 16 Sup. Ct. (40 L. Ed. 691), the court says:

"It was within the power of the Legislature of Texas to pro-

vide for determining and quieting the title to real estate within the limits of the state and within the jurisdiction of the court, after actual notice to all known claimants, *and notice by publication to all others.*"   (Italics ours.)

We can conceive of no logical reason why a sovereign state claiming title to lands by escheat should have its title determined and quieted by a proceeding in court requiring constructive service only on residents of the state, and at the same time the state be powerless to provide a similar mode of service in other actions to quiet title.   As I read the constitutional provisions relied on by the defendant, they make no exception in favor of a state.   The state can no more disregard the requirements of due process, when seeking to quiet its own title to land as against a possible owner, than it can in the procedure adopted for quieting title as between individuals.   When the Constitution declares that no person shall be deprived of property without due process of law, there is no exception to the inhibition; nor is there any immunity in favor of the state on account of its proprietary interest in the subject-matter of the proceeding.

For the foregoing reasons we are inclined to the opinion that the act in question is not obnoxious to either the state or federal Constitutions as far as the form of notice and manner of service are concerned.

Another objection raised by the demurrer in this case is that the act attempts to confer judicial authority on the several county clerks of the state as ex officio registrars of title in violation of section 1 of article 5 of the state Constitution.   There is no merit in this contention.   The act specifically provides that "registrars of title and their deputies shall be authorized and required, under the direction of their respective courts" (setting out the duties to be performed).   It then provides that they shall "generally perform such other acts as the court may prescribe."   Comp. Laws 1917, section 4934.   Their duties in every respect seem to be merely ministerial.   No attempt is made to clothe them with judicial power.

The writer is of the opinion that the objections raised by

the demurrer have not been sustained. The act in some respects is not as satisfactory as it might be made without in any manner impairing its efficiency. The court is authorized after the expiration of fifteen days from the publication and posting of the order, to set the case down for hearing. It is further provided that at such time the court may proceed to take such action as may be proper upon the evidence before it. If that should be construed to mean that at that time the court may enter its decree of confirmation and registration, it seems to the court the time is exceedingly short. Most of the states whose statutes we have examined allow a longer period of time. This, however, is a matter for the Legislature, and we have no doubt it will receive such consideration as it deserves.

There appears, however, to have been an honest attempt on the part of the Legislature to safeguard the interests of all persons concerned. An assurance fund is provided by the act for the purpose of indemnifying those who had no actual notice of registration. Comp. Laws Utah 1917, section 5002, provides that such persons, within two years from the time the right of action accrued, may institute suit and recover such damages as they may have sustained. The measure of damages is the value of the property at the time the right to bring such action first accrued. So that in any event the act cannot result in serious hardship, even if there is an occasional instance in which actual notice was not received by the owner of the property. Our own opinion is, if the court carefully exercises the cautionary powers conferred upon it by the act in regard to notice and proof, the instances in which persons may be deprived of their property for want of actual notice will be exceedingly rare.

The application for peremptory writ is allowed.

CORFMAN, C. J., and WEBER and GIDEON, JJ., concur.

FRICK, J. I concur in the conclusions reached by Mr. Justice THURMAN. I feel constrained to add, however,

that notwithstanding the very clear, logical, and convincing opinion of my Associate there are some provisions of the act which are not involved in this proceeding, and are not referred to by Mr. Justice THURMAN in his opinion, which, to my mind, nevertheless, will be found ·difficult to harmonize with some of the provisions of our Constitution. Upon those questions I withhold my judgment until they shall be presented in some concrete case. The questions to which I refer, and upon which I withhold my judgment, are found in sections 33, 39, 61, and 64 of the original act, being chapter 28, Laws Utah 1917, and which correspond to Comp. Laws Utah 1917, sections 4952, 4958, 4980, and 4983. While there may be one or two other sections which are doubtful, it is not necessary to refer to them specifically at this time.